(257 P.3d 1244)
No. 102,749

STATE OF KANSAS, *Appellee*, v. RYAN POWELL, *Appellant*.

Opinion filed June 24, 2011.

*Korey A. Kaul*, of Kansas Appellate Defender Office, for appellant.

*Joe E. Lee*, county attorney, and *Steve Six*, attorney general, for appellant.

Before MALONE, P.J., PIERRON, J., and ARNOLD-BURGER, JJ.

PIERRON, J.: Ryan Powell appeals his convictions after a bench trial for one count of theft, a severity level 9 nonperson felony, in violation of K.S.A. 21-3701; one count of felony criminal damage to property, a severity level 9 nonperson felony, in violation of K.S.A. 21-3720; and one count of misdemeanor criminal damage to property, a class B nonperson misdemeanor, in violation of K.S.A. 21-3720. Powell challenges the district court's denial of his motion to suppress based on the *United States v. Leon*, 468 U.S. 897, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984), good faith exception. We affirm.

Powell was charged with burglary, theft, criminal trespass, two counts of felony criminal damage to property, and one count of misdemeanor criminal damage to property.

The district court held a bench trial on the following stipulated facts:

"1. Unauthorized control was obtained or exerted over a Greenwood County Sheriff's Department patrol unit on or about, July 22, 2007, with the intent to permanently deprive Greenwood County of the use or benefit of the patrol unit. The patrol unit was worth at least $1,000 but less than $25,000. This act occurred in Greenwood County, Kansas.

"2. Said Greenwood County patrol unit was intentionally damaged, injured, mutilated, defaced, destroyed, or its use substantially impaired, by means other than by fire or explosion on, or about, July 22, 2007, without consent of the owner. The amount of damage was at least $1,000 but less than $25,000. This act occurred in Greenwood County, Kansas. The damages were consistent with the patrol unit being wrecked by the driver of the vehicle. Blood and tissue were found in the vehicle that were not present prior to the patrol unit being stolen.

"3. Tires owned by Patrick Romans, and tires owned by Greenwood County, were intentionally damaged, injured, mutilated, defaced, destroyed, or their use substantially impaired, on or about November 22, 2007, by Ryan without consent of the owners. The amount of damages was less than $1,000. This act occurred in Greenwood County, Kansas. Kevin Sill and Cali Harber would testify that the defendant admitted to damaging the tires.

"4. On or about September 13, 2007, a search warrant was executed to obtain a blood sample, hair sample, oral swab, and fingerprints from the defendant, Ryan Powell. Samples of said draws were sent to the Sedgwick County Regional Forensic Science Center for testing against samples of blood and tissue obtained from the stolen patrol unit. The conclusion of said testing was that the DNA profiles are consistent with the DNA profile of the defendant, and therefore the defendant cannot be excluded as the source of said profiles. The probability of

selecting an unrelated individual at random from the Caucasian race who would exhibit a matching DNA profile is approximately 1 in 88.9 sextillion. The defendant does not have an identical twin. Detective Patrick Romans would testify that the defendant had denied ever being in the patrol unit at any time.

"5. On or about December 8, 2008, counsel for the defendant filed a motion to quash warrant and suppress the results of the search warrant to obtain a blood sample, hair sample, oral swab, and fingerprints from the defendant. On or about December 23, 2008, the Court denied the defendant's motion."

The district court found that the application for the search warrant did not mention that there was blood and tissue found in the vehicle. Therefore, technically, the application did not state facts necessary to establish probable cause for the search warrant. However, the court found the *Leon* good faith exception applied, and the evidence was admitted.

After listening to the agreed-upon stipulation of facts, the district court found Powell guilty of one count of felony theft, one count of misdemeanor criminal damage to property, and one count of felony criminal damage to property. The court sentenced Powell to 6 months in prison for theft and granted 12 months' probation; 6 months in prison for felony criminal damage to property, to run concurrently, and granted 12 months' probation; and 6 months in the county jail, to run consecutively, for the misdemeanor criminal damage to property. The court stated that Powell would serve 60 days in jail and then the court would consider parole.

First, Powell argues the district court erred in applying the good faith exception under *Leon*, 468 U.S. at 922-26, in denying his motion to suppress. We disagree.

Generally, an appellate court reviews a district court's decision on a motion to suppress using a bifurcated standard. Without reweighing the evidence, the district court's factual findings are reviewed to determine whether they are supported by substantial competent evidence. The ultimate legal conclusion regarding the suppression of evidence is reviewed using a de novo standard. *State v. Woolverton*, 284 Kan. 59, 70, 159 P.3d 985 (2007).

In *Leon*, the Supreme Court held the use of evidence that was unlawfully obtained was allowed if officers acted in reasonable reliance on a search warrant issued by a detached and neutral mag-

istrate, even if it was determined later the magistrate erred and probable cause did not support the warrant. In so holding, the Supreme Court considered whether the deterrent effect that normally justified the exclusionary rule was likely to be realized under the particular factual circumstances found in the case. The Supreme Court concluded that "suppression of evidence obtained pursuant to a warrant should be ordered only on a case-by-case basis and only in those unusual cases in which exclusion will further the purposes of the exclusionary rule." 468 U.S. at 918.

The result in *Leon* was a determination that when a search occurred based upon a warrant, the exclusionary rule applied only if: (1) the magistrate was deliberately misled by false information when issuing the warrant; (2) the magistrate wholly abandoned the detached and neutral role required; (3) there was so little indicia of probable cause in the affidavit that it would be entirely unreasonable for an officer to believe the warrant was valid; or (4) the warrant so lacked specificity that the officers could not reasonably presume it to be valid. 468 U.S. at 923.

Kansas courts have repeatedly accepted the underlying principle in *Leon*, *i.e.*, that a good faith exception to the exclusionary rule might be applicable if a search was conducted pursuant to a warrant that was later to be found lacking in probable cause, even though some cases disagree how to apply *Leon's* stated criteria. See *State v. Hoeck*, 284 Kan. 441, 455-65, 163 P.3d 252 (2007); *State v. Longbine*, 257 Kan. 713, 720-22, 896 P.2d 367 (1995), *disapproved on other grounds State v. Hicks*, 282 Kan. 599, 147 P.3d 1076 (2006); *State v. Ratzlaff*, 255 Kan. 738, 751-55, 877 P.2d 397 (1994); *State v. Doile*, 244 Kan. 493, 501-03, 769 P.2d 666 (1989), *abrogated on other grounds Horton v. California*, 496 U.S. 128, 110 S. Ct. 2301, 110 L. Ed. 2d 112 (1990).

Powell correctly states that the warrant application in this case did not contain any evidence that hair, blood, fingernails, or any other potential DNA item had been found in the stolen police car. He argues that without that information, no reasonable officer could believe the affidavit provided probable cause to search for DNA. The State does not dispute that the affidavit neglected to specifically state that blood and tissue were collected from the sto-

len patrol car which could be used for comparison to a suspect. However, the State argues this is exactly the kind of case contemplated by *Leon*.

Powell relies on *State v. Lum*, 27 Kan. App. 2d 113, 998 P.2d 137, *rev. denied* 269 Kan. 938 (2000), where the court determined that the issuing judge abandoned his neutral and detached role due to the lack of reliability in the affidavit and resulting lack of probable cause; thus, the good faith exception did not save the search warrant. 27 Kan. App. 2d at 121. Similar to the defendant in *Lum*, Powell argues the affidavit used in his case completely lacked any information to support a reasonable belief that his DNA would be relevant evidence. We do not find that any of the *Leon* factors are present to support application of the exclusionary rule.

At the motion to suppress hearing, the district court first ruled the affidavit was clearly lacking in evidence that blood or genetic material had been found in the stolen vehicle that would link it to a purpose of obtaining Powell's blood sample. However, the court held the warrant was saved by the good faith exception in *Leon* because there was no evidence the officer did anything improper or inappropriate in bringing the affidavit before the court. The court indicated that if the omitted statement—the stolen car contained genetic evidence—had been in the affidavit, then the warrant would have been perfectly good, and that statement was simply overlooked.

Detective Patrick Romans stated in the warrant application that "[d]uring the interview I suggested that Powell submit to a DNA test to prove his innocence. Powell initially told me that he didn't feel the need to provide a sample but he later agreed to come to the sheriff's office to provide the sample for comparison." Although the application does not specifically indicate officers had a sample, it is logical to assume from the warrant application that officers had a sample for comparison with Powell's DNA.

We do not believe the exclusion of the evidence in this case would "further the purposes of the exclusionary rule." *Leon*, 468 U.S. at 918. We find it was reasonable for the officers in this case to believe they had a valid warrant to obtain DNA evidence from Powell.

Powell also argues there is no statutory authority for issuance of a search warrant for a blood sample in Kansas.

K.S.A. 22-2502(a)(1) provides that a magistrate may issue a search warrant for the seizure of:

"Any things which have been used in the commission of a crime, or any contraband or any property which constitutes or may be considered a part of the evidence, fruits or instrumentalities of a crime under the laws of this state, any other state or of the United States. The term 'fruits' as used in this act shall be interpreted to include any property into which the thing or things unlawfully taken or possessed may have been converted."

Powell argues that K.S.A. 22-2502(a) does not specifically authorize a search warrant for blood, hair, spit, or any other part of the human body while it is still a part of the human body. Powell cites the Rhode Island case of *State v. Dearmas*, 841 A.2d 659 (R.I. 2004), where the State similarly filed an application for a search warrant to collect the defendant's blood. The *Dearmas* court discussed the meaning of the word "property" in a similar context to the K.S.A. 22-2502(a)(1) and held that "no living person or people, nor their constituent living parts, can be lawfully considered as 'property.' " 841 A.2d at 663. Powell asks us to hold—like the *Dearmas* court—that the district court lacked authority to issue a search warrant for his blood and erred in denying his motion to suppress.

*Dearmas* is distinguishable. The Rhode Island statute at issue, R.I. Gen. Laws § 12-5-2 (2003), only involved "property" without any other options. The Rhode Island court felt that blood did not fit the definition of "property," and the court was forced to find the warrant statute inadequate to cover a seizure of a person's blood. In response to *Dearmas*, the Rhode Island Legislature amended R.I. Gen. Laws § 12-5-2 in 2004 to add the category of "[s]amples of blood, saliva, hair, bodily tissues, bodily fluids, or dental impressions from the body of a person, that may yield evidence of the identity of the perpetrator of a crime when subjected to scientific or other forensic analysis." Rhode Island Session laws, P.L. 2004, ch. 441, sec. 1; P.L. 2004, ch. 493, sec. 1.

K.S.A. 2010 Supp. 22-2502(a) is not as restrictive as R.I. Gen. Laws § 12-5-2. As pointed out by the State, the *Dearmas* court recognized there was authority counter to its position:

"To support its Rule 41 argument, the state cites to decisions from other jurisdictions that interpret their analogue to Rule 41 as permitting a court to issue a search warrant to seize a blood sample. *E.g., United States v. Allen*, 337 F. Supp. 1041, 1043 (E.D. Pa. 1972) (noting, in the context of Rule 41, that 'blood, hair and other bodily components are objects to be seized only through the warrant process'); *State v. Taylor*, 438 A.2d 1279, 1281 (Me. 1982) (holding that blood was tangible property subject to the provisions of Rule 41). In addition, the state cites to decisions from other jurisdictions opining that blood qualifies as a 'tangible object.' See *People v. Epps*, 182 Cal. App. 3d 1102, 227 Cal. Rptr. 625, 628 (1986); *Cox v. State*, 473 So. 2d 778, 780 (Fla. Dist. App. 1985); *People v. King*, 232 A.D.2d 111, 663 N.Y.S.2d 610, 614 (1997)." 841 A.2d at 666.

Powell recognizes the history in Kansas of allowing search warrants for DNA evidence. We have found the following cases in support of this history: *State v. Appleby*, 289 Kan. 1017, 1035, 221 P.3d 525 (2009) ("detective advised Appleby of the search warrant that authorized the officer to swab the inside of Appleby's mouth in order to obtain a DNA sample"); *Scott v. Werholtz*, 38 Kan. App. 2d 667, Syl. ¶ 3, 171 P.3d 646 (2007), *rev. denied* 286 Kan. 1180 (2008) ("Once law enforcement lawfully obtains an individual's blood sample and DNA profile through a valid search warrant, that evidence may be used in the investigation of other crimes for identification purposes."); *State v. Garcia*, 285 Kan. 1, 5, 169 P.3d 1069 (2007) (detectives "procured a search warrant to obtain DNA samples from Garcia"); *State v. Glynn*, 38 Kan. App. 2d 437, 444, 166 P.3d 1075 (2007), *rev. denied* 285 Kan. 1175 (2008) ("The search warrant was obtained to compare Glynn's DNA profile with that found on the knife used in the home invasion."); *State v. Colbert*, 257 Kan. 896, 905-06, 896 P.2d 1089 (1995) ("Colbert argues that blood, saliva, and hair evidence seized from his person pursuant to a search warrant for the State's DNA test was obtained because the affidavit supporting the search warrant deliberately omitted material facts.").

Powell argues along the lines of "just because we have always done it that way does not mean the court had jurisdiction to do it." On the contrary, we find the legislature's use of broad language in K.S.A. 22-2502(a)(1) of "[a]ny things which have been used in the commission of a crime" and "any property which constitutes or may be considered a part of the evidence" would give a district

court jurisdiction to order the search warrant in this case for samples of Powell's blood, hair, buccal (cheek) cells, and fingerprints.

In *People v. King*, 663 N.Y.S.2d 610, 614, 232 App. Div. 2d 111 (1997), the court stated:

"In this regard we note that the defendant could not plausibly assert any expectation of privacy with respect to the scientific analysis of a lawfully seized item of tangible property, such as a gun or a controlled substance. Although human blood, with its unique genetic properties, may initially be quantitatively different from such evidence, once constitutional concerns have been satisfied, a blood sample is not unlike other tangible property which can be subject to a battery of scientific tests."

K.S.A. 2010 Supp. 21-3110(17) defines property as "anything of value, tangible or intangible, real or personal." Black's Law Dictionary 1338 (9th ed. 2009) p. 1338, defines tangible property as "[p]roperty that has physical form and characteristics."

It would appear that the blood and tissue here would qualify as "property." We would also note that they would be "things which have been used in the commission of a crime."

We find, for the reasons stated above, that the DNA sample taken from Powell was properly admitted into evidence.

Affirmed.