No. 102,749

STATE OF KANSAS, *Appellee*, v. RYAN POWELL, *Appellant*.

(325 P.3d 1162)

Opinion filed June 6, 2014.

*Korey A. Kaul*, of Kansas Appellate Defender Office, argued the cause and was on the brief for appellant.

*Joe E. Lee*, county attorney, argued the cause, and *Steve Six*, attorney general, was with him on the brief for appellee.

The opinion of the court was delivered by

BILES, J.: Ryan Powell was convicted of felony theft and felony criminal damage to property. He seeks review of a Court of Appeals decision affirming the district court's denial of his motion to suppress evidence obtained through a search warrant authorizing the seizure of his blood, hair, fingerprints, and buccal (cheek) cells. *State v. Powell*, 45 Kan. App. 2d 1090, 257 P.3d 1244 (2011). Powell argues the district court erred because: (1) After it found the warrant lacked the required probable cause, it applied the *United States v. Leon*, 468 U.S. 897, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984), good-faith exception to the exclusionary rule and permitted the illegally seized evidence to be used at trial; and (2) K.S.A. 22-2502 does not expressly authorize search warrants for blood, hair, fingerprints, cheek cells, or other biological material. We reverse Powell's convictions and remand the case to the district court for further proceedings consistent with this opinion.

We hold the district court erred by not suppressing the evidence. The *Leon* good-faith exception cannot save the search because it

was objectively unreasonable for the officer to rely on the warrant. In so holding, we do not reach Powell's alternative argument that K.S.A. 22-2502 does not permit the court-ordered seizure of biological material. We note, however, this presents a question of first impression for this court and may merit further legislative consideration given the lack of express statutory language.

## FACTUAL AND PROCEDURAL BACKGROUND

In July 2007, a Greenwood County Sheriff's Department patrol car was stolen from a locked compound and found wrecked in a ditch the following morning. Officers collected hair and tissue samples from the cracked windshield, hair from the rearview mirror, and blood from the vehicle's interior. In September, officers sought a search warrant for "samples of [Powell's] blood, hair, and oral swabs as well as fingerprint samples."

The affidavit supporting the search warrant did not indicate DNA evidence had been recovered from the patrol vehicle or otherwise explain why blood, hair samples, buccal cell swabs, and fingerprints were sought in a case involving a stolen vehicle. It summarized a police interview with Powell, who denied involvement with the crime. It went on to explain that a detective had suggested Powell submit to a DNA test "to prove his innocence" and that Powell at first declined, but then agreed, to give a voluntary sample. The affidavit stated Powell failed to report for the test. The affidavit also mentioned three anonymous phone calls. Each claimed Powell was involved in the theft.

The first anonymous caller told the sheriff's office dispatch she "pretty much [knew] for 100% sure" that Powell was involved in the car theft. During the second call, an anonymous caller told the Greenwood County Crime Stoppers hotline that another named individual drove the stolen patrol car and that Powell was a passenger. In a third call, an anonymous tipster told the Crime Stoppers hotline that Powell had told the caller Powell was involved with the theft. It is not clear whether the calls were placed by the same person.

The affidavit also discussed the detective's questioning of Powell at Powell's workplace. Powell told the detective the night the car

was stolen was his last night on bond supervision and that he would not have done anything to get in trouble. The detective observed that he thought it odd Powell would be able to remember the exact date in question because the detective did not mention the date during questioning. The detective also noted Powell originally said he learned about the theft from the newspaper but then later claimed to have learned about it from others. Powell's wife told the detective they read about the crime in the newspaper.

A district court judge approved and signed the warrant. Hair and oral swabs were collected from Powell, and a medical professional drew his blood. The State then charged Powell with involvement in the theft.

Powell filed a motion to suppress the biological material, arguing the warrant lacked probable cause and the *Leon* good-faith exception to the exclusionary rule did not apply because there was so little indicia of probable cause in the warrant that an officer could not objectively reasonably rely on it. Powell also argued K.S.A. 22-2502, which is the statutory authority for a judge to issue search warrants, does not permit law enforcement to obtain a warrant to seize blood, hair, fingerprints, or cheek cells.

After a hearing on the suppression motion, the same district court judge who signed the warrant determined it lacked probable cause. The judge found the affidavit failed to specify that officers had DNA material from the stolen car that could be compared to any samples taken from Powell. The judge held the warrant would have been "a good search warrant" if that information had been included.

But despite ruling the search was illegal, the district court admitted the evidence under the *Leon* good-faith exception because it determined the officers acted in good faith and reasonably relied on the warrant. See *Leon*, 468 U.S. at 906-07 (sanction for a Fourth Amendment violation should weigh the costs and benefits of preventing the prosecution's use of illegally seized evidence). The district court also held the broad language of K.S.A. 22-2502(a)(1) indicates a warrant can be issued for biological material even though blood, hair, cheek cells, and fingerprints are not specified

in the statute as instrumentalities of a crime or normally considered property.

Following the suppression hearing, Powell stipulated that his DNA profile from the samples taken from him would match the DNA of the biological material found in the stolen patrol car. Powell agreed to a bench trial on stipulated facts, and the district court found him guilty of felony theft and felony criminal damage to property. He was sentenced to two concurrent 6-month prison terms, granted probation, and ordered to pay over $20,000 in restitution.

Powell appealed to the Court of Appeals. He argued the good-faith exception was inapplicable because the affidavit in support of the search warrant had "little indicia of probable cause," citing the failure to explain that law enforcement had biological material from the car to compare with Powell's samples. The panel rejected this argument, concluding that while the affidavit did not affirmatively specify that officers had DNA material for comparison, it implied as much when it stated Powell had initially agreed to provide DNA samples. *Powell*, 45 Kan. App. 2d at 1094-95.

The panel also rejected Powell's argument that K.S.A. 22-2502 does not authorize a search warrant for blood, hair, fingerprints, and cheek cells. The panel held that blood and tissue fell within the statutory phrase "property which constitutes or may be considered a part of the evidence, fruits or instrumentalities of a crime" under K.S.A. 22-2502(a)(1)(A). 45 Kan. App. 2d at 1097.

Powell petitioned this court for review, which we granted under K.S.A. 20-3018(b), obtaining jurisdiction under K.S.A. 60-2101(b).

## PROBABLE CAUSE ANALYSIS

The Fourth Amendment to the United States Constitution guarantees the right to be free from "unreasonable searches and seizures," and the Kansas Constitution provides the same protection. *State v. Daniel*, 291 Kan. 490, 498, 242 P.3d 1186 (2010), *cert. denied* 131 S Ct. 2114 (2011). When evidence is illegally obtained, its suppression may be warranted under the exclusionary rule, which is a judicially created rule that safeguards against unconstitutional searches and seizures by suppressing illegally seized evi-

dence as a deterrent to future violations. See *Leon*, 468 U.S. at 906; *Daniel*, 291 Kan. at 496. Under *Leon*, suppression is not required when law enforcement officers reasonably rely on a search warrant that is later determined to be legally invalid. *Leon*, 468 U.S. at 913. The issue of reasonable reliance is center stage in Powell's case because the State has not appealed from the district court's determination that the warrant was invalid. See *State v. Plotner*, 290 Kan. 774, 777, 235 P.3d 417 (2010) (An issue not briefed, or raised incidentally without argument, is deemed abandoned.).

But as the Court noted in *Leon*, "it frequently will be difficult to determine whether the officers acted reasonably without resolving the Fourth Amendment issue." 468 U.S. at 925. We believe this is one of those circumstances, so we will begin by reviewing whether the district court correctly held the warrant lacked probable cause. This analysis will not change the law of the case as to the warrant's lack of probable cause, but it will assist us in considering the good-faith exception's application, which is the issue before us.

*Standard of Review*

A judge deciding whether an affidavit supplies probable cause considers the totality of the circumstances presented and makes "a practical, common-sense decision whether a crime has been or is being committed and whether there is a fair probability that contraband or evidence of a crime will be found in a particular place." *State v. Hicks*, 282 Kan. 599, 613-14, 147 P.3d 1076 (2006). In *Hicks*, we discussed an appellate court's role when reviewing a lower court's probable cause determination:

"When an affidavit in support of an application for search warrant is challenged, the task of the reviewing court is to ensure that the issuing magistrate had a substantial basis for concluding probable cause existed. This standard is inherently deferential. It does not demand that the reviewing court determine whether, as a matter of law, probable cause existed; rather, the standard translates to whether the affidavit provided a substantial basis for the magistrate's determination that there is a fair probability that evidence will be found in the place to be searched. Because the reviewing court is able to evaluate the necessarily undisputed content of an affidavit as well as the issuing magistrate, the reviewing court may perform

its own evaluation of the affidavit's sufficiency under this deferential standard." 282 Kan. 599, Syl. 2.

*Discussion*

The defective warrant in this case sought Powell's blood, hair, fingerprints, and cheek cells. And one well-known requirement for a valid warrant is that "those seeking the warrant must demonstrate to the magistrate their probable cause to believe that 'the evidence sought will aid in a particular apprehension or conviction' for a particular offense." *Dalia v. United States*, 441 U.S. 238, 255, 99 S. Ct. 1682 60 L. Ed. 2d 177 (1979) (quoting *Warden v. Hayden*, 387 U.S. 294, 307, 87 S. Ct. 1642, 18 L. Ed. 2d 782 [1967]).

We agree with the district court that the search warrant was deficient because it failed to establish a nexus between the evidence sought (the biological material identified) and that evidence's ability to aid in the apprehension or conviction of the crime's perpetrators. The search warrant application does not clearly identify the crime alleged. Instead, it generalizes that the "[a]ffiant has probable cause to believe and does believe that an offense against the laws of the State of Kansas, has been committed." It goes on to explain only that the biological material sought was located on Powell.

But other information needed to discern the purposes for obtaining this biological material is left to the imagination. For example, one must gather from the nature of the anonymous tips that the crime at issue is the patrol car theft, and the warrant does not explain how the biological material sought would aid in prosecuting the crime. Clearly, the affidavit supporting the warrant fails to meet the nexus requirement, which is especially troublesome given that the evidence sought from Powell involved intrusions beyond the human body's surface without any justification alleged in the warrant for that intrusion. See *Maryland v. King*, 569 U.S. ___, 133 S. Ct. 1958, 1969, 186 L. Ed. 2d 1 (2013) (" '[T]he Fourth Amendment's proper function is to constrain, not against all intrusions as such, but against intrusions which are not justified in the circumstances, or which are made in an improper manner.' " [quoting

*Schmerber v. California*, 384 U.S. 757, 768, 86 S. Ct. 1826, 16 L. Ed. 2d 908 (1966)]).

As the United States Supreme Court cautioned when considering the extraction of a defendant's blood in *Schmerber*, 384 U.S. at 769-70:

"The interests in human dignity and privacy which the Fourth Amendment protects forbid any such intrusions on the mere chance that desired evidence may be obtained. *In the absence of a clear indication that in fact such evidence will be found, these fundamental human interests require law officers to suffer the risk that such evidence may disappear unless there is an immediate search.*" (Emphasis added.)

These interests are even more important because the biological material to be extracted from Powell was not at risk of disappearing, so quick police action was not required by exigent circumstances. In other words, there was time to do this correctly and to properly secure the warrant.

In its good-faith analysis, the Court of Appeals minimized this linkage by simply holding that "it [was] logical [for the reviewing judge] to assume from the warrant application that officers had a sample for comparison with Powell's DNA." *Powell*, 45 Kan. App. 2d at 1094. The panel seemed to hold the detective's statement that Powell had been asked previously to submit voluntarily to a DNA test to prove his innocence sufficiently implied that police had a sample for comparison.

We disagree that the district court could perform its role of a neutral and detached magistrate by simply assuming the necessary nexus existed. The warrant requirement is a vital step in the search and seizure of evidence. It ensures that a neutral and detached magistrate makes the assessment as to whether a search and seizure may be properly undertaken, instead of leaving that decision to the officer " 'engaged in the often competitive enterprise of ferreting out crime.' " *Aguilar v. Texas*, 378 U.S. 108, 111, 84 S. Ct. 1509, 12 L. Ed. 2d 723 (1964), (quoting *Johnson v. United States*, 333 U.S. 10, 13-14, 68 S. Ct. 367, 92 L. Ed. 436 [1948]) *overruled on other grounds by Illinois v. Gates*, 462 U.S. 213, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983).

The panel's analysis, premised as it is on assumptions about what was meant and understood, results in the kind of rubber stamping the Fourth Amendment is specifically meant to avoid. See *Aguilar*, 378 U.S. at 111 (" 'Although the reviewing court will pay substantial deference to judicial determinations of probable cause, the [reviewing] court must still insist that the magistrate perform [the] 'neutral and detached' function and not serve merely as a rubber stamp for the police.' ").

We also disagree with the district court that the warrant would have satisfied the probable cause requirement if it simply had noted the stolen patrol car contained biological material because under the totality of the circumstances, the anonymous tips did not provide a substantial basis for finding probable cause to believe evidence of the crime would be found in Powell's biological material. The United States Supreme Court has made clear that while an anonymous tip can be used to demonstrate probable cause, more is required than the tip itself. See *Illinois v. Gates*, 462 U.S. 213, 241-46, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983) (discussing that an anonymous tip can be relied on if the totality of the circumstances demonstrates probable cause and discussing the need for corroboration, verification, and a description of the basis of knowledge).

This court has held that tips from unidentified informants must be corroborated, accompanied by a description of the informant's basis for knowledge, or have some indicia of reliability. See *Hicks*, 282 Kan. at 615 (discussing why the absence of police verification of a citizen tip was problematic because it was unsupported by "some indication" the information was accurate and concluding that "[a]llegations without factual support should not be considered in determining whether probable cause existed to issue a search warrant."); see also *State v. Ibarra*, 282 Kan. 530, 550-52, 147 P.3d 842 (2006) (discussing whether an anonymous tip corroborated by an odor associated with illegal drugs provided probable cause).

A tip's probative value is determined by examining the totality of the circumstances, including the informant's basis of knowledge, *i.e.*, the means by which the informant acquired the information, and the informant's veracity, *i.e.*, evidence of the informant's cred-

ibility and reliability. *State v. Hensley*, 298 Kan. 422, 431, 313 P.3d 814 (2013). And while a deficiency on one prong can be compensated for by a strong showing on the other, 281 Kan. at 431, in this instance the basis of knowledge and veracity are both largely unknown.

The third caller stated that Powell told the caller he was involved in the car theft, but no other information was recited in the affidavit. It did not state whether the anonymous calls were from the same or multiple persons, gave no basis upon which to assess the callers' (or caller's) credibility, and said nothing about the source of information for the first two phone calls. Put simply, based on what was related in the affidavit, the anonymous telephone tips fail the most basic of tests for corroboration of anonymous or confidential sources in our caselaw, so the link between Powell and the crime evaporates.

The district court correctly held the warrant and affidavit failed to provide a substantial basis for the issuing judge's determination that there is a fair probability that evidence will be found in the place to be searched. But the deficiencies were greater than those recognized by the district court. The affidavit failed to justify the intrusion into Powell's body because it did not establish the required nexus between the requested search and the ability of evidence that might be recovered to aid in apprehending or convicting the person who stole the car. And it relied principally on anonymous tips devoid of information concerning the informants' basis of knowledge or veracity.

### THE GOOD-FAITH EXCEPTION DOES NOT APPLY

We move next to consider whether the district court and panel erred in holding that evidence obtained through the invalid search warrant was admissible under the *Leon* good-faith exception. For this, the question is not whether the judge erred in believing there was sufficient probable cause to issue the warrant, the inquiry instead is whether that judge "so obviously erred that any reasonable officer would have recognized the error." *Messerschmidt v. Millender*, 565 U.S. ___, 132 S. Ct. 1235, 1250, 182 L. Ed. 2d 47 (2012).

*Standard of Review*

When reviewing a district court's decision on a motion to suppress, an appellate court first examines the district court's findings to determine whether they are supported by substantial competent evidence. *State v. Karson*, 297 Kan. 634, 639, 304 P.3d 317 (2013). The district court's legal conclusions based on those findings are then reviewed de novo. If there are no disputed material facts, the issue is a question of law over which an appellate court has unlimited review. 297 Kan. at 639.

*Discussion*

In *Leon*, the United States Supreme Court held the exclusionary rule should not bar the use of "evidence obtained by officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be unsupported by probable cause." *Leon*, 468 U.S. at 900. But the *Leon* Court also noted there would be some cases when the exclusionary rule would apply even if an officer obtained a warrant and abided by its terms. 468 U.S. at 922.

The *Leon* Court recognized four circumstances when suppression would still be an appropriate remedy if a warrant was later determined to be invalid: (1) The magistrate issuing the warrant was deliberately misled by false information; (2) the magistrate wholly abandoned his or her detached or neutral role; (3) there was so little indicia of probable cause in the affidavit that it was entirely unreasonable for the officers to believe the warrant was valid; or (4) the warrant so lacked specificity that officers could not determine the place to be searched or the items to be seized. 468 U.S. at 923. We have previously concluded the holding in *Leon* applies in Kansas without modification. See *State v. Hoeck*, 284 Kan. 441, 463-64, 163 P.3d 252 (2007) (adopting the four exceptions enunciated in *Leon* for the suppression of evidence illegally seized based on good-faith reliance on invalid warrant).

Powell argues for application of the third, "bare-bones" exception, *i.e.*, there was so little indicia of probable cause stated in the affidavit that it was entirely unreasonable for officers to believe the warrant was valid. He supports this position by noting the point

previously discussed—that the affidavit failed to supply a nexus between the items sought in the search warrant and the police-car theft because the affidavit did not mention that officers seized biological material from the vehicle. The State argues the officers' reliance on the court-approved warrant was reasonable despite this omission.

To evaluate whether it was entirely unreasonable for the officers to believe the warrant was valid, we must determine "whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *Leon*, 468 U.S. at 922 n.23. To make that determination, we look to the affidavit in its entirety. 468 U.S. at 922 n.23.

The threshold to avoid the *Leon* good-faith exception is a high one. *Messerschmidt*, 565 U.S. ___, 132 S. Ct. at 1245. The *Messerschmidt* Court held:

"Where the alleged Fourth Amendment violation involves a search or seizure pursuant to a warrant, the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner or, as we have sometimes put it, in 'objective good faith.' [Citation omitted.] Nonetheless, under our precedents, the fact that a neutral magistrate has issued a warrant authorizing the allegedly unconstitutional search or seizure does not end the inquiry into objective reasonableness. Rather, we have recognized an exception . . . when 'it is obvious that no reasonably competent officer would have concluded that a warrant should issue.' [Citation omitted.]" 132 S. Ct. at 1245.

We find some similarities in the omission in Powell's case with *Groh v. Ramerez*, 540 U.S. 551, 124 S. Ct. 1284, 157 L. Ed. 2d 1068 (2004). In *Groh*, officers obtained a judicially approved warrant and carried out a search of Ramirez' residence. The warrant failed to describe the items to be seized, although the warrant application particularly described the place to be searched and the contraband expected to be found. No evidence was recovered, and Ramirez sued the special agent who prepared and signed the warrant application under 42 U.S.C. § 1983 (2000), claiming a Fourth Amendment violation. The *Groh* Court held that the search violated the Fourth Amendment, and addressed whether the agent was entitled to qualified immunity. 540 U.S. at 563-65.

The qualified immunity analysis is relevant to this appeal because "the same standard of objective reasonableness" that the Court applied in *Leon* defines the qualified immunity accorded an officer who obtained or relied upon an allegedly invalid warrant. *Messerschmidt*, 132 S. Ct. at 1245 n.1; *Malley v. Briggs*, 475 U.S. 335, 344, 106 S. Ct. 1092, 89 L. Ed. 2d 271 (1986) ("[W]e hold that the same standard of objective reasonableness that we applied in the context of a suppression hearing in *Leon* . . . defines the qualified immunity accorded an officer whose request for a warrant allegedly caused an unconstitutional arrest."). The *Groh* Court held the agent was not entitled to qualified immunity because no reasonable officer could believe in the warrant's validity since it did not state with particularity the items to be seized. 540 U.S. at 564. The Court emphasized that this particularity requirement was well-established, and went on to emphasize that "even a cursory reading of the warrant in this case—perhaps just a glance—would have revealed a glaring deficiency that any reasonable police officer would have known was constitutionally fatal." 540 U.S. at 564.

The same is true in this case because the warrant also reveals a glaring deficiency—the omission of any explanation why Powell's blood, hair, prints, or cheek cells could provide evidence about the police-car theft. And even a cursory glance at the warrant and supporting affidavit would reveal this disconnect. See *Messerschmidt*, 132 S. Ct. at 1252 (Kagan, J., concurring in part and dissenting in part) ("The warrant application thus had a hole at its very center: It lacked any explanation of how gang items would (or even might) provide evidence of the domestic assault the police were investigating.").

This omission by itself might be enough to conclude no reasonable officer could believe the warrant was valid. But, in reviewing the totality of the affidavit, there is more. We must also examine the deficiencies with the anonymous tips summarized in the affidavit.

Numerous federal courts have addressed with varying results whether the good-faith exception should apply when a warrant that relies in part on anonymous tips is later found invalid. See, *e.g.*, *United States v. Danhauer*, 229 F.3d 1002 (10th Cir. 2000) (ap-

plying good-faith exception); *United States v. Helton*, 314 F.3d 812 (6th Cir. 2003) (declining to apply good-faith exception). We must emphasize these inquiries are intensely fact-oriented and are difficult to apply in other circumstances, but one theme persists—the degree to which officers attempted to corroborate the tips.

In *Danhauer*, the court noted "the absence of information establishing the informant's reliability or basis of knowledge does not necessarily preclude an officer from manifesting a reasonable belief that the warrant was properly issued, [citation omitted,] *particularly when the officer takes steps to investigate the informant's allegation.*" (Emphasis added.) 229 F.3d at 1007. The court explained the detective both obtained and executed the search warrant and reasonably believed his investigation sufficiently linked the manufacture of methamphetamine to the residence and the detective's affidavit contained more than conclusory statements based on the informant's allegation. 229 F.3d at 1007. Ultimately, the court applied the good-faith exception.

In *Helton*, the court noted the statements in the affidavit "originated from an unknown, untested source; they were a product of multiple layers of hearsay; they were sparse in relevant detail; and, most importantly, they were not corroborated in any meaningful manner." 314 F.3d at 824. The *Helton* court concluded there was little, if any, significance attached to the anonymous statements and no reasonable officer would have believed the remaining allegations in the affidavit would support probable cause. 314 F.3d at 824-25.

In its analysis as to whether the *Leon* bare-bones exception applied, the *Helton* court held there were two relevant inquiries. The first was whether a reasonable officer would believe that the anonymous tipster's statements, without more corroboration, were trustworthy and reliable. The second was whether a reasonable officer would believe the affidavit established probable cause. The court held no reasonable officer would afford much weight to the anonymous tipster's statements because they: (1) originated from an unknown, untested source; (2) were the product of multiple layers of hearsay; (3) were sparse in relevant detail; and (4) were not corroborated in any meaningful manner. It also held that with-

out corroboration, any reasonable officer would know that the affidavit "came well short of establishing probable cause." 314 F.3d at 825.

In this case, a reasonable officer would not believe the three anonymous tips were trustworthy and reliable without some corroboration. The tips provided by the anonymous caller (or callers) about Powell were simply conclusory allegations that he was involved in the police-car theft. There was no discussion of the first two anonymous callers' bases of knowledge. And although the third caller claimed to have learned about the theft directly from Powell, the claim remains at best questionable because there is nothing to indicate that caller even knew Powell. Moreover, there was no attempt at meaningful corroboration. For example, the second caller claimed another individual drove the car, but there is nothing demonstrating an attempt to corroborate that Powell and that individual were together the night of the crime.

Knowing the tips were not sufficient, a reasonably well-trained officer would also not believe the affidavit established probable cause. There is the obvious omission of any explanation of how Powell's biological material would aid in apprehending or prosecuting those who stole the police car. In addition, the affidavit relies primarily on anonymous, unverified, and uncorroborated tips containing no indicia of reliability to connect Powell to the theft. And based upon our binding judicial precedent on probable cause, these types of anonymous tips have little value. See *State v. Hensley*, 298 Kan. 422, 431, 313 P.3d 814 (2013) (under case facts the unidentified informant's tip was entitled to no weight); *Hicks*, 282 Kan. at 614-15 (detailing how and why information from "concerned citizens" is to be tested for veracity and basis of knowledge).

Nor can the conversation between the detective and Powell create the indicia of probable cause necessary to apply the good-faith exception to the exclusionary rule. The only evidence from this exchange that could be used to establish probable cause is that Powell was able to remember the date the car theft occurred and that Powell changed his story about how he learned of the theft. But as the prosecutor noted during the suppression hearing, the stolen car was a big event in Greenwood County, and the date of

the theft was tied to a significant event in Powell's life—his last night on bond supervision. Additionally, Powell's confusion regarding how he learned about the theft is not particularly probative, especially since Powell's wife corroborated his original statement that he read about the theft in the newspaper. In other words, Powell's answers during the interview were at best slightly suspicious but do not provide sufficient indicia of probable cause necessary for a reasonably well-trained officer to believe the warrant was valid.

Finally, we must address whether exercising the exclusionary rule would serve its stated purpose. The United States Supreme Court has repeatedly indicated that the sole purpose of the exclusionary rule is "to deter future Fourth Amendment violations." *Davis v. United States*, 564 U.S. 229, 236-37, 131 S. Ct. 2419, 180 L. Ed. 2d 285 (2011); see *Karson*, 297 Kan. at 639 (noting the purpose of the exclusionary rule is to deter future violations by the State). We find that purpose served in this case. Refusing to apply the good-faith exception here will deter future Fourth Amendment violations because: (1) It will signal to police officers that they cannot ignore well-settled law regarding anonymous tips, and (2) officers will be motivated not to prematurely pursue search warrants. See *Malley*, 475 U.S. at 343.

Accordingly, we hold the district court erred in applying the *Leon* good-faith exception to the exclusionary rule.

### K.S.A. 22-2502

Powell argues K.S.A. 22-2502 does not authorize a search warrant for blood, hair, fingerprints, or cheek cells. K.S.A. 22-2502(a)(1) provides in pertinent part that a search warrant may be issued for the search or seizure of

"[a]ny things which have been used in the commission of a crime, or any contraband or any property which constitutes or may be considered a part of the evidence, fruits or instrumentalities of a crime under the laws of this state, any other state or of the United States."

Although Powell's statutory argument raises an issue of first impression for this court, we will not reach it because we have reversed on other grounds and express no opinion on the panel's

conclusion that the statute implicitly authorizes court-ordered sei-zures of blood, hair, fingerprints, or cheek cells. Nevertheless, the legislature may wish to consider whether the statute's plain lan-guage appropriately addresses legislative intent.

We reverse Powell's convictions for felony theft and felony crim-inal damage to property because the district court improperly ap-plied the *Leon* good-faith exception. The case is remanded to the district court for further proceedings consistent with this opinion.