NOT DESIGNATED FOR PUBLICATION

No. 119,013

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

SHANNON MARIE BOGART,
*Appellant*.

MEMORANDUM OPINION

Appeal from Shawnee District Court; EVELYN Z. WILSON, judge. Opinion filed April 12, 2019. Affirmed.

*Rick Kittel*, of Kansas Appellate Defender Office, for appellant.

*Jodi Litfin*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before ARNOLD-BURGER, C.J., PIERRON, J., and MCANANY, S.J.

PER CURIAM: A grand jury indicted Shannon Marie Bogart on one count of felony theft and one count of interference with law enforcement. Prior to trial, she moved to suppress evidence discovered in a warrantless search. The district court denied her motion. The trial jury convicted her on both counts and the court sentenced her to 12 months of probation with an underlying sentence of 10 months in prison and 12 months in the county jail, to run concurrently. Bogart appeals.

On October 1, 2014, Topeka Police Officer Lucas Cummings responded to a shoplifting call at Hobby Lobby. The Hobby Lobby loss prevention officers (LPOs) reported one male and one female suspect, carrying a duffle bag, had gone into a nearby

1

McDonald's. Topeka Police Officers Charles Wilson and Evan Friedrichs responded to McDonald's to assist Cummings. They found two people with a duffle bag inside McDonald's matching the suspect descriptions and asked them to step outside. Once outside, the officers detained the suspects pending the outcome of the investigatory stop. The female suspect identified herself as Shelly Marie Bogart, date of birth November 23, 1975.

Before returning to Hobby Lobby to review the surveillance video, the LPOs directed officers to Taco Bell, where another group of people who may have also been involved in the theft had gone. The Hobby Lobby video confirmed that Bogart had entered the store with the male suspect who carried an empty-looking duffle bag on his shoulder and Bogart had carried the "bulging" duffle bag out of the store after spending time in the knickknacks aisles.

Officer Wilson investigated the suspects at Taco Bell and, after approximately 30 minutes, was unable to determine whether they were involved. He then returned to the McDonald's parking lot, where Officers Cummings and Friedrichs were attempting to run the suspects' names for wants and warrants. The duffle bag was sitting in front of Bogart and she claimed the bag was hers. Wilson walked around the bag and saw bits of rope, seashells, and wood inside. He did not have to manipulate or touch the bag to see the items. Though he did not see any price tags on the items, he believed them to be similar to items sold in the knickknacks aisle of Hobby Lobby. The officers contacted a detective to determine whether the totality of circumstances constituted probable cause to conduct a warrantless search of the duffle bag. Upon approval by the detective, Officer Wilson removed items from the bag. The items had Hobby Lobby price tags attached to them.

At some point during the investigatory detention, Bogart provided Officer Cummings with her correct name and birth date, admitting there might be a warrant for her arrest. Dispatch confirmed Bogart had a felony warrant. The officers arrested Bogart and placed her bag into property.

Before trial, Bogart moved to suppress the evidence discovered in the warrantless search of her bag. She contended the search did not fall under one of the specifically established exceptions to the warrant requirement. She claimed the officers could not have searched her bag under the plain view doctrine because they lacked reasonable suspicion to detain her for the investigatory stop, Officer Wilson's discovery was not inadvertent, and the incriminating character of the items was not immediately apparent.

Following the motions hearing on July 16, 2015, the district court denied Bogart's motion. The court considered application of the plain view doctrine a "close call" but determined it applied under the circumstances. The court also determined the evidence was admissible under the inventory search exception of the warrant requirement through the inevitable discovery doctrine. Though the search occurred before officers knew of Bogart's warrant, under the inevitable discovery doctrine, her bag would have been searched as an inventory search upon her arrest.

The jury found Bogart guilty of theft and interference with law enforcement. The district court sentenced Bogart to 10 months in the Kansas Department of Corrections for count 1 and 12 months in the Shawnee County Jail for count 2. The sentences were to run concurrently. The court suspended execution of the sentence and placed Bogart on 12 months of supervised probation.

Bogart appeals the district court's denial of her suppression motion.

*Motion to Suppress Evidence*

Bogart challenges the district court's findings that the plain view and inventory search exceptions to the warrant requirement apply to Officer Wilson's search of her duffle bag.

"The standard of review for a district court's decision on a motion to suppress has two parts. The appellate court reviews the district court's factual findings to determine whether they are supported by substantial competent evidence. But the court's ultimate legal conclusion is reviewed using a de novo standard. The appellate court does not reweigh the evidence or assess the credibility of witnesses. When the facts supporting the district court's decision on a motion to suppress are not disputed, the ultimate question of whether to suppress is a question of law over which the appellate court exercises unlimited review. [Citations omitted.]" *State v. Hanke*, 307 Kan. 823, 827, 415 P.3d 966 (2018).

The parties do not dispute the material facts, so the issue is a question of law. The State has the burden of establishing the lawfulness of the warrantless search. 307 Kan. at 827.

When the district court has denied a motion to suppress, the moving party must contemporaneously object to the introduction of that evidence at trial to preserve the issue for appeal. *State v. Richard*, 300 Kan. 715, 726, 333 P.3d 179 (2014); see K.S.A. 60-404. Generally, any pretrial objection to the admission of evidence must be preserved by contemporaneously objecting at trial, which can be accomplished through a standing objection. *Richard*, 300 Kan. at 721.

At trial, Bogart objected as follows during Hobby Lobby employee Kenny Resser's direct examination by the State:

"Q. What, if anything did they find in the bag?
"A. They found about eight or nine home accent –
"[Bogart's counsel]: Objection, Your Honor, on my motion heard at a previous hearing.
"The Court: Overruled."

Though Bogart objected to Resser's testimony about the contents of the duffle bag, she did not request a standing objection or object when the State offered Officer Wilson's body camera video showing the bag search into evidence or when the State published the

4

video. Bogart also failed to object when Officers Wilson and Friedrichs testified as to the contents of the bag.

Kansas appellate courts have, on occasion, refused to strictly apply the contemporaneous objection rule in some contexts upon finding the underlying purpose for the rule has been satisfied. See *State v. Hart*, 297 Kan. 494, 510-11, 301 P.3d 1279 (2013). The Kansas Supreme Court has characterized the contemporaneous objection rule as "a prudential rather than jurisdictional obstacle to appellate review." *State v. Gaona*, 293 Kan. 930, 956, 270 P.3d 1165 (2012). By only objecting to Resser's testimony about the contents of the bag, Bogart did not technically properly preserve the issue for appeal. However, since there had been legal objections to the evidence we will review the testimony.

The parties agree to the material facts, specifically: Upon detention, Bogart provided a false name to officers, potentially extending the time permitted for the investigatory detention, and Officer Wilson conducted a warrantless search of her bag before discovering that Bogart had a felony warrant. The parties disagree on the application of the plain view and inventory search exceptions to the warrant requirement.

The Fourth Amendment to the United States Constitution and § 15 of the Kansas Constitution Bill of Rights protect citizens from unreasonable searches and seizures. *State v. Williams*, 297 Kan. 370, 376, 300 P.3d 1072 (2013). All warrantless searches are per se unreasonable, subject to a few specifically established and well-delineated exceptions. *State v. Estrada-Vital*, 302 Kan. 549, 556, 356 P.3d 1058 (2015). The recognized exceptions are consent, search incident to lawful arrest, stop and frisk, probable cause plus exigent circumstances, the emergency doctrine, inventory searches, plain view or feel, and administrative searches. *State v. Sanchez-Loredo*, 294 Kan. 50, 55, 272 P.3d 34 (2012).

When law enforcement illegally obtains evidence in an unconstitutional search or seizure, the judicially created exclusionary rule may act as a safeguard by suppressing evidence. *State v. Powell*, 299 Kan. 690, 694, 325 P.3d 1162 (2014). The purpose of the rule is deterrence from future violations. 299 Kan. at 695. Courts should only apply the exclusionary rule to further its intended purpose. *Illinois v Krull*, 480 U.S. 340, 347, 107 S. Ct. 1160, 94 L. Ed. 2d 364 (1987). If Officer Wilson's search of Bogart's bag does not fall under one of the exceptions to the search warrant requirement, the district court could have properly suppressed the evidence from trial, which could have affected the outcome.

*Plain View Doctrine*

"Under the plain view exception, a law enforcement official can seize evidence of a crime if '"(1) the initial intrusion which afforded authorities the plain view is lawful; (2) the discovery of the evidence is inadvertent; and (3) the incriminating character of the article is immediately apparent to searching authorities."' [Citation omitted.]" *State v. Ewertz*, 49 Kan. App. 2d 8, 14, 305 P.3d 23 (2013).

Bogart challenges the lawfulness of the initial intrusion and the incriminating character of the evidence.

First, Bogart contends the officers lacked reasonable suspicion to detain her. Officer Wilson testified that Bogart and the male suspect were detained through the theft investigation; they were not free to leave. For an investigative detention, an officer must have a reasonable suspicion that the person stopped has committed a crime, is committing a crime, or is about to commit a crime and the detention can last no longer than necessary to effectuate its purpose. *State v. DeMarco*, 263 Kan. 727, 734, 952 P.2d 1276 (1998). Reasonable suspicion is the "minimum of objective justification" and is "considerably less than proof of wrongdoing by a preponderance of the evidence." *United States v. Sokolow*, 490 U.S. 1, 7, 109 S. Ct. 1581, 104 L. Ed. 2d 1 (1989). "Reasonable suspicion can arise from information that is less reliable than that required to show probable cause. Both reasonable suspicion and probable cause are dependent upon information possessed

6

by the detaining authority and the information's degree of reliability." *DeMarco*, 263 Kan. at 735. When determining whether reasonable suspicion existed, the court considers the totality of the circumstances, giving "deference to a trained law enforcement officer's ability to distinguish between innocent and suspicious circumstances." 263 Kan. at 735.

The officers had reasonable suspicion to detain Bogart through the duration of the investigation into the reported theft from Hobby Lobby. Though the Hobby Lobby LPOs did not observe Bogart concealing items or placing them into the duffle bag, employees observed her and the male suspect enter the store together with what appeared to be an empty or flat duffle bag. The LPOs observed Bogart in the knickknacks aisle selecting items, though they did not know which items specifically. They also saw Bogart walk out with the duffle bag that appeared to be bulging on the sides. The LPOs followed the suspected thieves to the nearby McDonald's and provided officers with a description before officers entered McDonald's to detain them. The LPOs' observations of suspicious behavior with the change in the mass of the bag were sufficient to provide reasonable suspicion of theft. The LPOs' information was sufficiently reliable for the officers to have reasonable suspicion to detain Bogart.

Next, Bogart contends that even if the officers had reasonable suspicion to detain her initially, she should have been released once she identified herself because nobody had witnessed her commit a crime. The length of the detention was extended by Wilson's investigation at Taco Bell and Bogart providing officers with false identifying information. After the officer detained her, the LPOs notified Wilson of other suspects at Taco Bell. Wilson spent approximately 30 minutes investigating the group at Taco Bell before returning to McDonald's. Bogart remained detained through that investigatory period.

"An investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop. Similarly, the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's

suspicion in a short period of time." *Florida v. Royer*, 460 U.S. 491, 500, 103 S. Ct. 1319, 75 L. Ed. 2d 229 (1983). In determining whether the officers complied with durational requirements, we examine "'whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant.'" *State v. Smith*, 286 Kan. 402, 410, 184 P.3d 890 (2008) (quoting *United States v. Sharpe*, 470 U.S. 675, 686, 105 S. Ct. 1568, 84 L. Ed. 2d 605 [1985]). In *State v. Walker*, 292 Kan. 1, 15-16, 251 P.3d 618 (2011), the Kansas Supreme Court concluded that when an officer has reasonable suspicion to detain and investigate a pedestrian for an alleged crime, officers may lawfully take the suspect's ID to run a computer records check (citing *State v. Morlock*, 289 Kan. 980, 995, 218 P.3d 801 [2009]). It is the State's burden to show the detention was sufficiently limited in duration to satisfy the conditions of an investigative detention. *Royer*, 460 U.S. at 500.

Here, the investigatory detention lasted more than 30 minutes; a more specific duration was not provided. Once officers detained Bogart, the LPOs informed them of more suspects at Taco Bell. Officer Wilson walked down to Taco Bell and estimated he was there 30 minutes. The investigation at Taco Bell was related to the investigation at McDonald's as the suspects were all alleged to have been linked to the same theft incident. Officer Cummings testified that during the detention he did not recall conversing with Bogart or the male suspect beyond getting their names and trying to determine if they had warrants, which was complicated by Bogart providing false information. Because the evidence shows that the duration of the detention was limited to the amount of time it took for Wilson to investigate the suspects at Taco Bell, who were alleged to have committed the theft with Bogart, and was limited in scope to investigating the theft and discovering Bogart's identity to run a background check, the investigatory detention did not violate her constitutional rights. Therefore, the initial intrusion was lawful.

Finally, Bogart asserts that the plain view doctrine was inapplicable because the incriminating character of the items seen was not immediately apparent. She argues that

seashells, rope, and wood are not inherently illegal or incriminating and so Officer Wilson based his determination on his experiences rather than the facts of the case. She further asserts that the items seen could have been purchased at other stores as Wilson did not see any tags until he conducted the search.

In *Texas v. Brown*, 460 U.S. 730, 741-42, 103 S. Ct. 1535, 75 L. Ed. 2d 502 (1983), the United States Supreme Court reaffirmed that "'[t]he seizure of property in plain view involves no invasion of privacy and is *presumptively reasonable, assuming that there is probable cause to associate the property with criminal activity*'" (quoting *Payton v. New York*, 445 U.S. 573, 587, 100 S. Ct. 1371, 63 L. Ed. 2d 639 [1980]). The Court considered probable cause a "flexible, common-sense standard. It merely requires that the facts available to the officer 'warrant a man of reasonable caution in the belief,' that certain items may be contraband or stolen property or useful as evidence of a crime; it does not demand a showing that such a belief be correct or more likely true than false. A 'practical, nontechnical' probability that incriminating evidence is involved is all that is required. [Citations omitted.]" *Brown*, 460 U.S. at 742. "[T]he officer's training and experience may contribute to a finding of probable cause." *State v. Wonders*, 263 Kan. 582, 596, 952 P.2d 1351 (1998).

Officer Wilson testified he had been in Hobby Lobby many times for both personal and professional reasons. He was familiar with items located in the knickknacks aisles of the store and the items he saw in the bag were items he believed to be from Hobby Lobby. Using his personal and professional experience with Hobby Lobby in forming his belief that the items were stolen property was appropriate and supported by caselaw. Though Bogart contends the items could have been purchased from another store, probable cause for a plain view seizure does not require certainty, but a common-sense conclusion. See *Brown*, 460 U.S. at 742 (citing *United States v. Cortez*, 449 U.S. 411, 418, 101 S. Ct. 690, 66 L. Ed. 2d 621 [1981]). Therefore, the incriminating character of the items was immediately apparent and appropriately based on Wilson's experience. The district court properly determined the plain view doctrine applied.

9

*Inevitable Discovery Doctrine*

Because the plain view doctrine applies and is sufficient to deny Bogart's motion to suppress the evidence, we need not analyze whether the evidence would have been inevitably discovered in an inventory search.

Affirmed.