NOT DESIGNATED FOR PUBLICATION

No. 114,060

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellant/Cross-appellee*,

v.

MARK A. WELLS,
*Appellee/Cross-appellant*.


MEMORANDUM OPINION

Appeal from Reno District Court; TRISH ROSE, judge. Opinion filed October 21, 2016. Affirmed.

*Thomas R. Stanton*, deputy district attorney, *Keith E. Schroeder*, district attorney, and *Derek Schmidt*, attorney general, for appellant/cross-appellee.

*Charles A. O'Hara*, of O'Hara & O'Hara LLC, of Wichita, for appellee/cross-appellant.

Before MALONE, C.J., SCHROEDER, J., and WALKER, S.J.

*Per Curiam*:  Mark A. Wells was convicted of one count of possession of methamphetamine with the intent to sell, deliver, or distribute; one count of possession of drug paraphernalia with the intent to package a controlled substance; and one count of possession of drug paraphernalia with the intent to inhale a controlled substance into the human body. The State appeals and argues that the district court erred when it granted Wells' motion for a downward dispositional departure sentence. Wells filed a cross-appeal and argues that the district court erred when it denied his motions to suppress evidence. For the reasons stated herein, we affirm the district court's judgment.

1

FACTUAL AND PROCEDURAL BACKGROUND

In January 2011, Kenneth D. Miller informed officers with the Reno County Drug Enforcement Unit (DEU) that he had purchased at least 200 pounds of methamphetamine from James Elliott over the previous 10 years. Miller told officers that Elliott was Wells' sexual partner, the two had been "kicked out" of Kansas City because of their involvement in methamphetamine distribution, and they were now living on North Washington Street in Hutchinson, Kansas.

In October 2011, DEU officers spoke with Wells. Wells admitted that he was involved in methamphetamine distribution but said he wanted to become an informant for the DEU. On October 19, 2011, DEU officers had Wells participate in a controlled buy of methamphetamine from Nicole Walter.

In September 2012, DEU officers received information from several sources that Wells was selling large amounts of methamphetamine which he obtained from Arkansas, Kansas City, and Wichita. Also in September 2012, a confidential informant for the Newton Police Department informed DEU officers that he had met Wells at a residence in Halstead, Kansas, to discuss purchasing large quantities of methamphetamine. During the meeting, Wells handed the informant a plastic container that contained over 1 pound of methamphetamine and asked the informant to place the container in Wells' car, which was a dark-colored four-door BMW. Wells also told the informant that he would sell him large quantities of methamphetamine when the informant was ready to buy it.

On October 19, 2012, the confidential informant returned to the residence in Halstead and completed a controlled buy of 1 ounce of methamphetamine for $1,500 from someone at the residence. The person who sold the methamphetamine to the informant had received it from Wells.

2

Meanwhile, police surveillance had confirmed that Wells still lived at the residence on North Washington Street in Hutchinson. DEU officers also observed a black, four-door BMW backed up to the residence on several occasions. The BMW's tag was registered to Elliott, but the tag was assigned to another vehicle. The tag on the BMW was later changed to a 60-day tag. Although the police were unable to find any records on the temporary tag, Wells had been observed driving the BMW.

Based on these events, on October 22, 2012, DEU Officer Jeramy Hedges filed an affidavit requesting that the district court issue an order allowing placement of a GPS tracking device on the BMW. On the same day, district judge Patricia Macke Dick granted a 30-day order allowing the placement of a GPS device on Wells' BMW.

In late September 2012, DEU officers received information that John Clary was selling methamphetamine for Wells. In October 2012, DEU officers used a confidential informant to conduct a controlled buy of methamphetamine from Clary. The buy was conducted in a parking lot in Hutchinson. Clary drove a 2007 Pontiac Grand Prix, which was registered to him, to the parking lot. The informant told DEU officers that Clary continued to be involved in the distribution of methamphetamine.

On November 5, 2012, DEU officers again ran the 60-day tag on Wells' BMW. This time the tag returned as registered to Wells. On November 6, 2012, DEU officers observed Clary and Wells at Wells' residence. Clary came out of the residence and met with two individuals. Before meeting one of the individuals, Clary went to his Pontiac Grand Prix. The second individual parked his vehicle down the street and met with Clary for a short time before returning to the vehicle. Hedges believed this short meeting was consistent with a drug transaction. DEU officers also observed a silver 2012 Ford Focus with Oklahoma tags parked at Wells' residence. The vehicle was a rental car from Tulsa, Oklahoma. Officers also received information from the confidential informant that Clary would be making an out-of-state trip to resupply methamphetamine that week.

On November 7, 2012, DEU officers followed Wells' BMW to a Comfort Inn motel. At the Comfort Inn, officers observed that Clary's vehicle was also in the parking lot and saw Clary hold open the door to the side entrance of the motel. Approximately 10 minutes later, Wells, Clary, and Walter, who had previously sold methamphetamine to Wells, got into Wells' BMW and drove to the other side of the motel where they shuffled bags from one vehicle to another. Wells' BMW and Clary's Grand Prix then left the Comfort Inn parking lot and proceeded to a Walmart parking lot where they met another vehicle. After a couple minutes, Wells' BMW and Clary's Grand Prix left the parking lot and proceeded in different directions. Forty-five minutes after the vehicles left the parking lot, Hedges received information that Wells and Clary were going to the Kansas City area in the Ford Focus to purchase multiple pounds of methamphetamine.

Based on this second set of events, and the fact that Clary had prior convictions for possession and sales of narcotics, Hedges filed an affidavit for a search warrant for the Ford Focus on November 8, 2012. In the affidavit, Hedges alleged that there was probable cause that Wells and Clary were involved in the distribution and use of controlled substances and that evidence of these crimes would be found in the Ford Focus. The district court granted a search warrant for the Ford Focus.

On November 8, 2012, at 6:45 p.m., officers stopped the Ford Focus as it pulled up to Wells' residence. A search of the vehicle found the following items:

> "[F]our (4) ziplock bags containing a crystalline substance believed to be methamphetamine; used gallon-size bags; a plastic cup; a digital scale with suspected methamphetamine residue; a box of new ziplock bags; a black backpack with a computer and miscellaneous items; a yellow torch lighter; a rental agreement showing the defendant [Wells] as the renter of the Ford Focus; tax papers in the name of Mark Wells; a box with receipts and packaging; and a black Samsung telephone."

Officers also found a glass methamphetamine pipe in Wells' pocket.

After Wells was advised of his *Miranda* rights, he told Hedges that there were several ziplock baggies containing methamphetamine in the trunk of his car, that he and Clary had traveled to Kansas City and purchased more than one pound of methamphetamine, and he had paid about $12,000 per pound for the methamphetamine. Wells also said that Clary had started weighing and packaging the methamphetamine during the drive back to Hutchinson and he had dropped Clary off to purchase more packaging materials. Clary had taken some of the methamphetamine with him. Wells also admitted to Hedges that he sold methamphetamine but denied selling to juveniles or first-time users. Wells stated that he had owed his supplier $62,000, but had paid off some of the debt and was planning to get out of the drug business once he had paid off all of his debt. KBI lab testing later revealed that the substance in the baggies was methamphetamine, and the weight of the methamphetamine was 371.35 grams.

On November 14, 2012, the State charged Wells with one count of possession of methamphetamine with the intent to sell, deliver, or distribute, one count of possession of drug paraphernalia with the intent to package a controlled substance, one count of possession of methamphetamine without tax stamps affixed, and one count of possession of drug paraphernalia with the intent to inhale a controlled substance into the human body. The State later filed an amended information charging Wells with the same crimes but excluding the tax stamp violation.

On June 28, 2013, Wells filed a motion to suppress the evidence found in the Ford Focus. Wells argued that the affidavit did not support the issuance of the search warrant for the Ford Focus. Wells also argued that the good faith exception to the exclusionary rule did not apply as Hedges could not have harbored an objectively reasonable belief that probable cause existed for the issuance of the warrant.

On September 16, 2013, Wells filed a second motion to suppress the evidence found in the Ford Focus and evidence obtained from the installation of the GPS tracking

5

device on the BMW. In this motion, Wells argued that K.S.A. 2012 Supp. 22-2502 did not authorize the issuance of a search warrant for a GPS device. Wells also argued that evidence found in the Ford Focus must be suppressed because it was discovered as the result of illegally obtained information from the GPS tracking device.

The district court held a hearing on the motions to suppress on February 27, 2014. The State argued that the motion to suppress information obtained from the GPS device was immaterial because no information from the GPS device was used in the affidavit for the search warrant for the Ford Focus. The State also argued that Wells' amended motion to suppress was restricted to a challenge of "the four corners of the affidavit" because Wells failed to submit an affidavit that challenged the truth or veracity of the search warrant affidavit.

The district court ruled that Wells' motion was not sufficient to support a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978). However, the district court also ruled that the hearing on the motion to suppress should proceed to determine whether there was sufficient probable cause for the issuance of the GPS tracking device. As for statutory authority for the GPS device, the district court ruled that a broad interpretation of K.S.A. 2012 Supp. 22-2502 supported the issuance of the order to attach the GPS device to the BMW.

Next, the parties addressed whether information from the GPS device was used in the affidavit for the search warrant for the Ford Focus. Hedges testified that officers followed Wells from Hutchinson to Wichita. He could not recall whether he relied on GPS data to follow Wells. Hedges testified that the request for a search warrant for the Ford Focus was based on the entirety of the investigation into Wells, including GPS tracking, but acknowledged that the GPS tracking was not mentioned in the affidavit. After Hedges' testimony, the district court took the matter under advisement to allow Wells to file a supplemental motion to suppress.

6

On March 7, 2014, Wells filed a second motion to suppress the search warrant for the installation of the GPS device on the BMW and all evidence stemming from the GPS device. Wells argued that the affidavit in support of the GPS search warrant was not sufficient because it contained stale information and did not contain enough details regarding the need for the GPS device. Wells also claimed that the good faith exception did not apply because the warrant was issued without a valid reason, and Hedges should have known that the warrant was not supported by probable cause.

The district court held a hearing on the second motion to suppress on August 22, 2014. The State argued that the affidavit provided probable cause to support the GPS search warrant, and even if there was not probable cause to issue the search warrant, the officers acted in good faith when they relied on the warrant. Wells repeated his arguments that the affidavit was insufficient to establish probable cause for the issuance of the warrant and that the good faith exception did not apply.

The district court took the motions to suppress under advisement and issued a ruling on August 29, 2014. The district court ruled that the GPS search warrant was not supported by probable cause, but the good faith exception to the exclusionary rule applied because there was no evidence that the magistrate who issued the warrant was deliberately misled or abandoned her neutral role, and the affidavit contained indication of probable cause. The district court also denied Wells' motion to suppress evidence located in the Ford Focus because the affidavit in support of that search warrant "contained bits and pieces of information, which, fit together, formed a picture which would lead a reasonably prudent person to believe that evidence of illegal distribution of controlled substances would be found in the vehicle."

The district court held a bench trial on stipulated facts on September 2, 2014. Based on the stipulated evidence, the district court found Wells guilty of the charges contained in the amended information.

On October 16, 2014, Wells filed a motion to depart. Wells requested that the district court grant him a downward departure because: (1) he was 43 years old; (2) he only had four misdemeanor convictions; (3) he previously had been a cooperating witness; (4) he came from a substantial family in the area; (5) he suffered from chronic depression and anxiety; (6) he was gay, which made his life difficult and contributed to his drug usage; (7) he was addicted to methamphetamine; (8) he had been admitted to a drug treatment program that specializes with gay people; (9) no charges had been filed during the pendency of the case; (10) he had attended all hearings; and (11) he lived in the area.

The district court held a sentencing hearing on June 12, 2015. Ken Howard testified at the hearing in support of Wells' motion to depart. Howard was a licensed clinical social worker, psychotherapist, and professor in Los Angeles, California. He specialized in people living with HIV and AIDS and with gay men. Howard had spoken with Wells over the phone on two occasions for a total of 2 hours. Based on these conversations, he concluded that there were alternatives to incarceration that would be suitable for Wells. Howard prepared a written report which was admitted into evidence.

After hearing the evidence and arguments of counsel, the district court imposed a controlling sentence of 146 months' imprisonment but granted a dispositional departure to probation for 36 months to be supervised by community corrections. In support of the departure sentence, the district court cited the fact that Wells was 44 years old and had no prior felony convictions and that he had struggled with depression and drug addiction. The State timely appealed the imposition of the departure sentence. Wells cross-appealed the denial of his motions to suppress the evidence.

The only claim the State raises in its appeal is that the district court erred when it granted Wells' motion for a dispositional departure. The State argues that the departure sentence was erroneous because Wells' criminal history or lack thereof should not be considered as a basis for departure. The State also argues that Howard's testimony about Wells' depression and drug addiction did not provide a basis for departure.

Wells argues that the district court did not err by granting the dispositional departure to probation. Wells claims that the district court was permitted to consider the fact that he had no prior felonies as a basis for departure. Wells also argues that there was substantial and competent evidence presented at the sentencing hearing to support the district court's finding that Wells suffered from depression and addiction.

The standard of review of a departure sentence depends on which of four potential questions are raised. First, if the issue is whether the record supports a particular reason for a departure, an appellate court applies the substantial competent evidence standard of review. *State v. Reed*, 302 Kan. 227, 249, 352 P.3d 530 (2015). Second, when the question is whether the district court erred in finding substantial and compelling reasons to depart existed in a particular case, the district court must view the mitigating circumstances and weigh those circumstances against any aggravating circumstances, ultimately determining whether substantial and compelling reasons warrant a departure. *State v. Rochelle*, 297 Kan. 32, 45, 298 P.3d 293 (2013). Appellate review of the district court's weighing of these factors is for an abuse of discretion. 297 Kan. at 45. Third, when the question is whether a particular mitigating or aggravating factor found by the sentencing court can *ever*, as a matter of law, be a substantial and compelling reason for a departure, appellate review is unlimited. *Reed*, 302 Kan. at 249. Fourth, when the extent of a durational departure is challenged, "the appellate standard of review is abuse of discretion, measuring whether the departure is consistent with the purposes of the

guidelines and proportionate to the crime severity and the defendant's criminal history." *State v. Spencer*, 291 Kan. 796, 807-08, 248 P.3d 256 (2011).

*Lack of criminal history*

The State first argues that a defendant's lack of criminal history should only be considered as a departure factor when the evidence before the district court demonstrates that the defendant's criminal conviction is an anomaly and not likely to occur again. The State also argues that the information provided in the search warrant affidavits precludes a finding that Wells' convictions in this case were an anomaly.

Wells argues that the State failed to adequately identify and brief the issue and did not support its argument with any authority. Wells also argues that Kansas caselaw does not support the State's contention that a defendant's lack of criminal history can only be considered as a departure factor when the conviction was an anomaly. Wells argues that the district court may consider his lack of a prior felony conviction as one factor for granting a departure sentence.

We reject Wells' argument that the State failed to adequately brief this issue. However, past decisions of this court and our Supreme Court allow for the consideration of the defendant's lack of a criminal history score when deciding whether to impose a departure sentence. In *State v. Grady*, 258 Kan. 72, 87-88, 900 P.2d 227 (1995), our Supreme Court reasoned that the legislature did not intend to prohibit the consideration of a defendant's criminal history as a factor for a downward dispositional departure in all cases. The *Grady* court held:

> "While generally criminal history is an improper departure factor because criminal
> history has already been used to set the presumptive sentence, we believe the legislature
> intended in the interest of justice that a trial court have discretion to impose a downward

10

dispositional departure where a defendant has no prior criminal history and has a failed common-law or statutory defense that is not meritless." 258 Kan. at 88.

Our Supreme Court also has held that a defendant's lack of criminal history could be considered as a factor when determining whether to impose a departure sentence but was not sufficient by itself to justify a departure sentence. *State v. Murphy*, 270 Kan. 804, 807, 19 P.3d 80 (2001), *abrogated on other grounds by State v. Martin*, 285 Kan. 735, 175 P.3d 832 (2008). Other cases from this court also provide that a defendant's criminal history may be considered as a factor supporting a departure sentence. In *State v. Ussery*, 34 Kan. App. 2d 250, 263, 116 P.3d 735 (2005), this court recognized that *Grady* allowed the district court to consider a defendant's lack of criminal history as evidence of a lack of predisposition to commit further crimes when determining whether to grant a departure request. This court reached the same conclusion in *State v. Haney*, 34 Kan. App. 2d 232, 246, 116 P.3d 747 (2005).

It is apparent from the past decisions of our Supreme Court and this court that a defendant's lack of prior convictions can be considered by a district court when it is determining whether to grant a departure sentence. The defendant's criminal history cannot be the sole factor supporting a departure sentence but certainly can be considered as one of multiple factors supporting a departure sentence. Wells' lack of criminal history was not the sole factor the district court cited as supporting its decision to grant a dispositional departure. Thus, the district court did not err when it considered Wells' lack of criminal history as a factor supporting a dispositional departure.

*Wells' depression and drug addiction*

The State also disputes the district court's findings that Wells suffered from depression and drug addiction. Whether the record supports a particular reason for granting a departure sentence is reviewed for substantial competent evidence. *Reed*, 302

11

Kan. at 249. Substantial competent evidence is defined as "such legal and relevant evidence as a reasonable person might accept as being sufficient to support a conclusion." *State v. Luna*, 271 Kan. 573, 575, 24 P.3d 125 (2001). When reviewing for substantial competent evidence, an appellate court does not reweigh the evidence or pass on the credibility of witnesses. *State v. Combs*, 280 Kan. 45, 50, 118 P.3d 1259 (2005).

The State's argument regarding the finding that Wells suffered from addiction and depression centers on Howard's report and testimony. The State argues that Howard's conclusion that Wells suffered from depression was based only on the fact that Wells is gay. However, when Howard's testimony and report is reviewed, it is apparent that it provides a basis for a reasonable person to conclude that Wells suffered from depression.

Howard was highly qualified to determine if Wells suffered from depression. Howard was a licensed clinical social worker in California, received a master's degree in social work, and had been in practice for decades. Howard also assessed Wells over the telephone collecting the following information:  family background and childhood, religious and spiritual backgrounds, sexuality and relationship history, education and employment history, substance abuse history of himself and his family, medical history, and his mental status.

Based on this information, Howard diagnosed Wells with stimulant-induced depressive disorder. The State argues that Howard's diagnosis was based solely on the fact that Wells is gay. While this fact played some role in Howard's reasoning and recommended treatment, he collected much more information from Wells during the evaluation than just his sexual orientation. In fact, Howard's report primarily links Wells' depression to his use of stimulants, not to his sexual orientation. Based on Howard's diagnosis, there was sufficient evidence to support the district court's finding that Wells struggled with depression and drug addiction. Thus, we conclude the district court did not err when it granted Wells' motion for a dispositional departure.

12

In his cross-appeal, Wells first claims that the district court erred when it denied his motion to suppress evidence obtained through the order allowing a GPS tracking device to be placed on his BMW vehicle. Wells makes two separate arguments about the GPS tracking device. Wells first argues that K.S.A. 2012 Supp. 22-2502, the statute that governed his search warrants, did not allow for placing tracking devices on vehicles at the time the device was placed on the BMW. As a separate issue, Wells argues that the district court erred when it found that the good faith exception to the exclusionary rule applied to the evidence obtained through the tracking device.

The State responds that K.S.A. 2012 Supp. 22-2502 was a codification of constitutional principles governing search warrants and was broad enough to authorize the issuance of the order allowing placement of the GPS device. The State also argues that even if K.S.A. 2012 Supp. 22-2502 did not authorize the placement of the GPS device, the district court properly denied Wells' motion to suppress because the exclusionary rule does not apply to this case.

Typically, this court applies a bifurcated standard of review to a district court's denial of a motion to suppress. *State v. Patterson*, 304 Kan. 272, 274, 371 P.3d 893 (2016). Under this standard, this court reviews the district court's factual findings to determine whether they are supported by substantial competent evidence but does not reweigh the evidence or assess the credibility of witnesses. 304 Kan. at 274. The ultimate legal conclusion is reviewed under a de novo standard. 304 Kan. at 274. To the extent that Wells' argument raises a question of statutory interpretation, our review is de novo. See *State v. Collins*, 303 Kan. 472, 473-74, 362 P.3d 1098 (2015).

The order that was the subject of Wells' motion to suppress was issued on October 22, 2012. On that date, K.S.A. 2012 Supp. 22-2502 provided in part:

13

"(a) A search warrant shall be issued only upon the oral or written statement, including those conveyed or received by electronic communication, of any person under oath or affirmation which states facts sufficient to show probable cause that a crime has been or is being committed and which particularly describes a person, place or means of conveyance to be searched and things to be seized. Any statement which is made orally shall be either taken down by a certified shorthand reporter, sworn to under oath and made part of the application for a search warrant, or recorded before the magistrate from whom the search warrant is requested and sworn to under oath. Any statement orally made shall be reduced to writing as soon thereafter as possible. If the magistrate is satisfied that grounds for the application exist or that there is probable cause to believe that they exist, the magistrate may issue a search warrant for the seizure of the following:

"(1) Any things which have been used in the commission of a crime, or any contraband or any property which constitutes or may be considered a part of the evidence, fruits or instrumentalities of a crime under the laws of this state, any other state or of the United States. The term 'fruits' as used in this act shall be interpreted to include any property which the thing or things unlawfully taken or possessed may have been converted.

. . . .

"(5)(A) Any information concerning the user of an electronic communication service; any information concerning the location of electronic communications systems, including, but not limited to, towers transmitting cellular signals involved in any wire communication; and any other information made through an electronic communications system."

K.S.A. 22-2502 has been amended since 2012. Specifically, K.S.A. 2015 Supp. 22-2502 clarifies that a search warrant may be issued for the search or seizure of anything that could be seized under the Fourth Amendment of the United States Constitution and for "the installation, maintenance and use of a tracking device." K.S.A. 2015 Supp. 22-2502(a)(1)(A), (a)(2). Wells argues that the amendment adding the tracking device language supports his argument that K.S.A. 2012 Supp. 22-2502 did not authorize the issuance of a search warrant for the placement of a GPS tracking device on his BMW. Wells argues that when the legislature amends a statute, courts presume that the

14

legislature intended to change the law from its prior state because the legislature does not enact useless or meaningless legislation.

The most fundamental rule of statutory construction is that the intent of the legislature governs if that intent can be ascertained. *State v. Jordan*, 303 Kan. 1017, 1019, 370 P.3d 417 (2016). An appellate court must first attempt to ascertain legislative intent through the statutory language enacted, giving common words their ordinary meanings. *State v. Barlow*, 303 Kan. 804, 813, 368 P.3d 331 (2016). When a statute is plain and unambiguous, an appellate court should not speculate about the legislative intent behind that clear language, and it should refrain from reading something into the statute that is not readily found therein. 303 Kan. at 813.

While Wells is correct that K.S.A. 2012 Supp. 22-2502 did not expressly authorize the issuance of a search warrant for the installation of the GPS device, this fact does not necessitate a conclusion that K.S.A. 2012 Supp. 22-2502 is ambiguous as to its application to GPS tracking devices. Rather, K.S.A. 2012 Supp. 22-2502(a)(1) is a clear codification of the United States Supreme Court's Fourth Amendment jurisprudence. Under the United States Supreme Court's Fourth Amendment jurisprudence, a search warrant may be issued to search any property where "there is probable cause to believe that fruits, instrumentalities, or evidence of a crime will be found." *Zurcher v. Stanford Daily*, 436 U.S. 547, 554, 98 S. Ct. 1970, 56 L. Ed. 2d 525 (1978). The warrant requirement also applies to effects and persons. *Heien v. North Carolina*, 574 U.S. ___, 135 S. Ct. 530, 535-36, 190 L. Ed. 2d 475 (2014) (quoting Fourth Amendment, United States Constitution). Effects include vehicles. *United States v. Jones*, 565 U.S. ___, 132 S. Ct. 945, 949, 181 L. Ed. 2d 911 (2012). Finally, the United States Supreme Court also requires that the warrant particularly describe the place of the search and things to be seized. *Groh v. Ramirez*, 540 U.S. 551, 557, 124 S. Ct. 1284, 157 L. Ed. 2d 1068 (2004).

This jurisprudence is in line with the provisions of K.S.A. 2012 Supp. 22-2502(a)(1). K.S.A. 2012 Supp. 22-2502(a)(1) authorizes the issuance of a search warrant to search a person, place, or vehicle to seize evidence, fruits, or instrumentalities of a crime when there is probable cause that a crime has been or is being committed. K.S.A. 2012 Supp. 22-2502(a)(1) also requires that the warrant particularly describe the person, place, or means of conveyance subject to the search and the things to be seized.

The language of K.S.A. 2012 Supp. 22-2502(a)(1) is plainly a codification of the United States Supreme Court's Fourth Amendment jurisprudence. The United States Supreme Court has previously addressed whether a search warrant may authorize the placement of a GPS tracking device on a vehicle. In *Jones*, which was decided 9 months before the search warrant was issued in this case, the Supreme Court held that a vehicle is an effect and the installation of a GPS device on a vehicle to monitor its movement is a search that can only be authorized with the issuance of a warrant. See 132 S. Ct. at 950.

Because a search warrant authorizing the placement of a GPS tracking device on a vehicle was allowed under the Supreme Court's Fourth Amendment jurisprudence at the time the warrant was issued in this case, it was also authorized under K.S.A. 2012 Supp. 22-2502(a)(1). Stated differently, K.S.A. 2012 Supp. 22-2502(a)(1) authorized the issuance of an order for a GPS tracking device to be placed on a vehicle even before the statute was amended to expressly permit the procedure. Therefore, the district court did not err when it denied Wells' motion to suppress on this ground.

GOOD FAITH EXCEPTION TO THE EXCLUSIONARY RULE

The second claim Wells raises in his cross-appeal is that the district court erred when it found that the good faith exception to the exclusionary rule applied to the evidence obtained through the tracking device. Wells argues that the good faith exception does not apply because the court abandoned its detached and neutral role when it issued

16

the warrant, and the warrant had so little indicia of probable cause that a reasonable law enforcement officer could not have relied on it. The State responds that the district court did not err by applying the good faith exception to the exclusionary rule.

The question of whether a court has correctly applied the good faith exception to the exclusionary rule is one of law. Appellate courts have unlimited review over questions of law. See *State v. Hoeck*, 284 Kan. 441, 447, 163 P.3d 252 (2007).

The exclusionary rule is a judicially created remedy which exists to prevent the use of unconstitutionally obtained evidence in a criminal proceeding against a defendant who was subjected to an illegal search. *Hudson v. Michigan*, 547 U.S. 586, 591-95, 126 S. Ct. 2159, 165 L. Ed 2d 56 (2006). If a search warrant was issued without probable cause, it would constitute an illegal search, and the exclusionary rule would apply.

However, there is a good faith exception to the exclusionary rule provided by *United States v. Leon*, 468 U.S. 897, 923, 104 S. Ct. 3405, 82 L. Ed. 2d 677, *reh. denied* 468 U.S. 1250 (1984). The good faith exception provides that the exclusionary rule should not bar the use of evidence obtained by law enforcement acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be invalid except where:  (1) the magistrate issuing the warrant was deliberately misled by false information; (2) the magistrate wholly abandoned his or her detached or neutral role; (3) there was so little indicia of probable cause contained in the affidavit that it was entirely unreasonable for the officers to believe the warrant was valid; or (4) the warrant so lacked in specificity that officers could not determine the place to be searched or the items to be seized. *State v. Powell*, 299 Kan. 690, 700, 325 P.3d 1162 (2014) (citing *Leon*, 468 U.S. at 923).

17

*Was it unreasonable for officers to believe the warrant was valid?*

Wells argues that the application of the good faith exception was erroneous because there was so little indicia of probable cause in the affidavit that it was entirely unreasonable for the officers to rely on the warrant. The question for this court to resolve is whether the judge who issued the search warrant "'so obviously erred that any reasonable officer would have recognized the error.'" 299 Kan. at 699 (quoting *Messerchmidt v. Millender*, 565 U.S. ___, 132 S. Ct. 1235, 1250, 182 L. Ed. 2d 47 [2012]). Stated another way, this court must determine "whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *Leon*, 468 U.S. at 922 n.23. When making this determination, the court looks at the affidavit supporting the search warrant in its entirety. 468 U.S. at 922 n.23.

Wells' argument centers on the lack of information regarding the veracity or reliability of the anonymous sources and confidential informants referred to in the affidavit. In *Powell*, 299 Kan. at 702-03, our Supreme Court discussed how to evaluate an affidavit that relies on unknown sources, confidential informants, or anonymous tips to determine whether it provided sufficient indicia of probable cause to support application of the good faith exception. In that case, law enforcement suspected Powell had been involved in the theft of a police car and applied for a search warrant to obtain Powell's blood, hair, oral swabs, and fingerprint samples. The affidavit in support of the search warrant stated that law enforcement had received three anonymous phone calls linking Powell to the theft. The affidavit also contained some detailed and contradictory statements Powell made during an interview about the date of the theft and how he was aware of the theft.

A search warrant was issued, and Powell was prosecuted for the theft. The district court denied Powell's motion to suppress evidence based on application of the good faith exception to the exclusionary rule. On appeal, our Supreme Court addressed whether the

good faith exception to the exclusionary rule was applicable. 299 Kan. at 699. Specifically, the court addressed whether the affidavit presented so little indicia of probable cause that it was entirely unreasonable for officers to believe the warrant was valid. 299 Kan. at 700. The *Powell* court examined the deficiencies of the anonymous tips that were included in the affidavit and found that the relevant inquiry was "the degree to which officers attempted to corroborate the tips." 299 Kan. at 703.

After examining two federal cases, the *Powell* court held that a reasonable officer would not have believed that the three anonymous tips were reliable or trustworthy. 299 Kan. at 704. The court pointed out that the tips provided by the anonymous caller were simply conclusory allegations that Powell was involved in the theft. 299 Kan. at 704. The court also cited the failure of law enforcement to attempt to corroborate the tips. 299 Kan. at 704. Based in part on the insufficiency of the tips, the court held that "a reasonably well-trained officer would also not believe the affidavit established probable cause" and declined to apply the good faith exception to the exclusionary rule. 299 Kan. at 704-05.

Although the court's analysis in *Powell* provides guidance, it is clear that the facts in that case are distinguishable from the facts herein. Admittedly, the affidavit in Wells' case did not provide any information as to the unknown sources' basis of knowledge that Wells was distributing methamphetamine. However, law enforcement officers did attempt to corroborate the unknown sources of information by contacting the Newton Police Department's confidential informant. This informant confirmed the unknown sources' claim that Wells was distributing methamphetamine. Further, the informant provided a basis of knowledge for his information when he told law enforcement the specific address where he discussed purchasing methamphetamine with Wells and placed a container of methamphetamine in Wells' BMW.

Law enforcement officers also attempted to corroborate the confidential informant's information. First, officers were able to corroborate the informant's claim that

19

Wells drove a dark-colored BMW. Second, officers had the informant conduct a controlled buy of methamphetamine at the same residence where the informant claimed he originally spoke to Wells. This controlled buy produced more information that the methamphetamine sold to the informant was originally provided by Wells.

Whether the affidavit established probable cause to support the search is not the relevant inquiry here. The question here is whether the affidavit established sufficient indicia of probable cause such that it was reasonable for officers to believe the search warrant was valid. The officers in this case did not merely rely on conclusory allegations from sources with unknown bases of knowledge. Instead, the officers took steps to corroborate the statements of both the unknown sources and the confidential informant. Further, the confidential informant provided a specific basis of knowledge for his information. These factors provided a sufficient indicia of probable cause to make it reasonable for the officers to rely on the search warrant, thereby supporting the district court's decision to apply the good faith exception to the exclusionary rule.

*Neutral and detached magistrate*

Wells also argues that application of the good faith exception was erroneous because the judge who issued the warrant wholly abandoned her neutral and detached role. In support of this argument, Wells relies on this court's decision in *State v. Lum*, 27 Kan. App. 2d 113, 998 P.2d 137 (2000). In *Lum*, this court stated that a magistrate abandons his or her detached and neutral role when he or she merely ratifies the bare conclusion of the officer that the alleged facts in the affidavit are true without any indicia of reliability of the officer's unknown sources. 27 Kan. App. 2d at 120-21.

*Lum* is clearly distinguishable from the facts herein. As already discussed, the affidavit in this case did not present bare conclusions of unknown sources without any indicia of their reliability. Both the unknown sources and the confidential informant's

20

information was corroborated to some degree by law enforcement. The confidential informant also provided law enforcement with a specific basis of knowledge for his information. The judge in this case did not merely ratify Hedges' conclusion that the allegations in the affidavit were true. Thus, the judge did not abandon her neutral and detached role, and the district court did not err when it applied the good faith exception to the exclusionary rule and denied Wells' motion to suppress.

SEARCH WARRANT FOR THE FORD FOCUS

Wells' final argument on cross-appeal is that the district court erred when it denied his motion to suppress the evidence seized from the search of the Ford Focus. Specifically, Wells argues that the affidavit lacked probable cause to support the search warrant because the affidavit did not state how law enforcement's source knew that Clary and Wells were taking the Ford Focus to Kansas City to purchase methamphetamine. The State responds that the affidavit provided probable cause to support the search of the Ford Focus. The State also argues that even if the affidavit failed to provide probable cause to support the search warrant, the good faith exception to the exclusionary rule applies.

To determine whether an affidavit in support of a search warrant supplies probable cause, a judge must consider the totality of the circumstances presented in the affidavit, including the veracity and basis of knowledge of any person supplying hearsay information, and make a "'practical, common-sense decision whether a crime has been or is being committed and whether there is a fair probability that contraband or evidence of a crime will be found in a particular place.' [Citation omitted.]" *State v. Mullen*, 304 Kan. 347, 353, 371 P.3d 905 (2016).

> "'When an affidavit in support of an application for search warrant is challenged, the task of the reviewing court is to ensure that the issuing magistrate had a substantial basis for concluding probable cause existed. This standard is inherently deferential. It does not demand that the reviewing court determine whether, as a matter of law, probable

cause existed; rather, the standard translates to whether the affidavit provided a substantial basis for the magistrate's determination that there is a fair probability that evidence will be found in the place to be searched. Because the reviewing court is able to evaluate the necessarily undisputed content of an affidavit as well as the issuing magistrate, the reviewing court may perform its own evaluation of the affidavit's sufficiency under this deferential standard.' [Citation omitted.]" *Mullen*, 304 Kan. at 353.

When the entire affidavit supporting the search warrant for the Ford Focus is reviewed, it is clear that there was more than enough information to establish a fair probability that evidence of a crime would be found in the vehicle. The affidavit provided a clear connection between Wells, Clary, the Ford Focus, and the distribution of methamphetamine. First, law enforcement linked Clary to methamphetamine distribution by conducting controlled buys of methamphetamine from Clary. Second, law enforcement linked Clary and Wells by observing Clary engage in suspicious meetings with known methamphetamine users at Wells' house. Third, officers connected the Ford Focus to Wells and Clary through their observation of the vehicle at Wells' home.

On the day before the search warrant was applied for, officers followed Wells and Clary to the Comfort Inn and observed suspicious behavior at the Comfort Inn and later in a Walmart parking lot. They also received information that Wells and Clary were heading to Kansas City to purchase more drugs. Wells is correct that the affidavit did not provide who the source was or how reliable the source was who supplied the information about the Kansas City trip. However, this source's information was corroborated by the fact that he or she knew that Wells and Clary's plans involved leaving from the Comfort Inn and driving the Ford Focus that had been observed outside Wells' home. This unknown source also corroborated an earlier tip from the confidential informant that Clary would make an out-of-state trip to resupply with methamphetamine during the week.

22

Overall, the information in the affidavit clearly linked Clary, Wells, and the Ford Focus to methamphetamine distribution. The affidavit supporting the search warrant provided a substantial basis for the judge's determination that there was a fair probability that evidence of methamphetamine distribution would be found in the Ford Focus. Because we agree with the district court that the affidavit provided probable cause for the search of the Ford Focus, we do not need to address the State's alternative argument that the search of the vehicle was justified under the good faith exception to the exclusionary rule. Thus, we conclude the district court did not err when it denied Wells' motion to suppress the evidence seized from the search of the Ford Focus.

Affirmed.